EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO NIEVES, acusado y apelante.

No. 4909.—*Sometido:* Diciembre 8, 1932. *Resuelto:* Enero 17, 1933.

M. *Rivera de la Vega,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Conjuntamente con Rodrigo Sánchez y Ramón Tosado, el apelante Antonio Nieves fué acusado porque "allá para el día 4 de septiembre de 1931 y en la municipalidad de San Juan, Puerto Rico, que forma parte del Distrito Judicial del mismo nombre, ilegal, voluntaria y maliciosamente, tenían y ofrecían en venta como pura y vendían y transportaban para el consumo humano, leche de vaca adulterada artificialmente con agua. Y el fiscal alega además, que Antonio Nieves, acusado en este caso, es reincidente por haber sido convicto anteriormente, o sea, en 24 de septiembre de 1929 a pagar $25 de multa y en 20 de mayo de 1931 a pagar $25 de multa, cuyas sentencias fueron impuestas por esta Hon. Corte, por un delito idéntico de adulteración de leche, las cuales fueron firmes y cumplidas por el acusado."

Al llamarse la causa para la vista en la Corte de Distrito de San Juan, Sánchez se declaró culpable. Nieves y Tosado alegaron su inocencia. Practicada la prueba, fueron declarados culpables, el primero en grado de reincidencia.

Nieves apeló y en su alegato señala como único error que la sentencia no está sostenida por la prueba, ya que ésta no demostró que la leche adulterada se vendía para el consumo humano. Cita en apoyo de su contención el caso de *Martínez* v. *People of Porto Rico,* 46 Fed. (2d) 427.

En el caso invocado la Corte de Circuito de Apelaciones del Primer Circuito, se expresó, en lo pertinente, así:

"Sin embargo, debe sostenerse el segundo error señalado, no porque no se alegara que el acusado a sabiendas vendió o tenía para la venta leche adulterada según se dijo en la corte inferior, toda vez que el estatuto no reconoce este elemento del delito y no se trata de uno de esos delitos en que es necesario alegar que el acto se realizaba a sabiendas, (Com. v. Farren, 9 Allen, 489; Com. v. Hallett, 103 Mass. 452; Com. v. Smith, 166 Mass. 370, 376, 44 N. E. 503; State v. Smith, 10 R. I. 258; Wharton's Criminal Law (9th Ed.) Par. 88), sino porque hace que la intención con que se vendió o se tenía para la venta sea un elemento necesario del delito.

"Tanto de conformidad con la versión española como con la inglesa, el delito se comete solamente cuando se tiene leche adulterada para la venta para el consumo humano. El estatuto fué redactado claramente en interés de la salud pública y el mal contra el cual se dirigió fué la adulteración de leche destinada al consumo público.

"No basta alegar que la leche se ofrecía y tenía a la venta ilegal y voluntariamente. Podrían concurrir ambas cosas, si se trataba de leche hurtada o si se tenía en forma tal que infringiera alguna ley local sin violar sin embargo el estatuto ni destinarse la leche para el consumo humano. Para cumplir con el estatuto y llevar al conocimiento del acusado información que le permita hacer frente al delito imputádole, las alegaciones de la denuncia o acusación deben incluir la intención con que se ofreció para la venta la leche adulterada o diluída, o, copiando del texto de la ley, debe alegarse que la leche se ofrecía a la venta 'con el fin de dedicarla al consumo humano.' "

Aquí la acusación cumple con lo que para todos los casos consideró la Corte de Circuito que era necesario alegar en ella. Claro es que si es necesario alegar que la leche se destina al consumo humano debe probarse también dicho elemento para que la ofensa imputada se entienda cometida. Pero ello no quiere decir que tenga que demostrarse por prueba directa como parece sostener el apelante. Puede probarse por inferencias de la prueba directa practicada.

Aquí se demostró que el acusado era empleado de un depósito establecido para la venta de leche, que vendió en efecto a su coacusado Tosado ocho litros de leche envasados en potes de medio litro y de un litro que Tosado colocó en una cesta para revenderlos en diferentes ajustes que tenía. El depósito adquiría la leche de "la Dairy". Pudo haber sido aun más específica la prueba, pero de ella se infiere claramente que la leche se vendía para el consumo humano y ello es suficiente. El acusado no alegó como defensa que la leche se vendiera para dedicarla a otros usos.

Recientemente en el caso de *El Pueblo* v. *Rivera,* 43 D.P. R. 922, 926, dijo esta corte:

"¿Es la prueba que queda suficiente? Habiendo creído la corte sentenciadora la del fiscal, no puede decirse que deje de demostrar que se trataba de un puesto para la venta de leche a cuyo cargo estaba el acusado, en el que existía leche adulterada para la venta y donde había gente comprando, siendo el acusado el que la despachaba, es decir, el que la vendía, de cuyos hechos se infiere el de que la venta lo era para el consumo humano."

*Debe confirmarse la sentencia recurrida.*